# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

|  |  |
|---|---|
| IN RE MICHAEL A. BRAGG | Case No. 1:11CR00026-002 |
|  | **OPINION AND ORDER** |
|  | By: James P. Jones<br>United States District Judge |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for the United States; Michael A. Bragg, Abingdon, Virginia.*

In this troublesome and distracting matter, a criminal defense attorney who regularly practices before this court is charged with violating the court's standard discovery order by leaving discovery materials, including grand jury transcripts and law enforcement reports, with his client in jail. Because I agree that this was a serious violation of the court's order, I will invoke the court's inherent authority and sanction the attorney.

This matter began when the government filed in a pending criminal case a Motion for an Order to Show Cause to determine why defense counsel should not be held in contempt for violating a discovery order entered by the magistrate judge on August 25, 2011 (hereafter, the "Discovery Order"). Defense counsel, attorney Michael A. Bragg, filed a Response and thereafter the parties appeared before the

magistrate judge for a hearing to determine if she should direct Mr. Bragg to appear before a district judge to show cause. *See* 28 U.S.C.A. § 636(e)(6) (West 2006) (providing procedure for certification of contempt matters from magistrate judge to district court).[1]

Thereafter, the magistrate judge issued a Certification of Facts and Order to Show Cause, requiring Mr. Bragg to appear before the undersigned to show cause why he should not be held in criminal contempt pursuant to 18 U.S.C.A. § 401(3) (West 2000 & Supp. 2011). A show cause hearing was held before me on February 2, 2012. Mr. Bragg represented himself. The matter is now fully submitted and ripe for decision.

The facts are based on the record, including the magistrate judge's certification, and are not disputed by the parties. Mr. Bragg, a member of the bar of this court, is an experienced criminal defense attorney who serves on this court's Criminal Justice Act ("CJA") panel. He was appointed to represent defendant Chris Avery at the time of Avery's arrest on July 14, 2011. On July 25, 2011, Avery was indicted on charges of drug conspiracy, carrying a firearm in furtherance of a drug trafficking crime and possession of a firearm by a convicted felon.

---

[1] In light of the allegations against him, Mr. Bragg moved for leave to withdraw from his representation of the defendant, which motion was granted by the magistrate judge.

On August 24, 2011, the government filed for consideration by the magistrate judge a Motion for Voluntary Disclosure of Grand Jury and Other Materials and for Limitations on Further Disclosure. The motion sought the court's permission to provide voluntary discovery to defense counsel. The motion stated:

> The United States submits the accompanying proposed Order in the interest of both advancing the case and protecting the secrecy of grand jury, tax return, criminal histories, and other investigative materials. The attached proposed order would prevent the unauthorized dissemination of materials voluntarily provided by the United States and would provide notice of sanctions in the event these materials were deliberately disclosed in an unauthorized manner or to unauthorized persons.

(Gov't's Mot. for Voluntary Disclosure 1.)

On August 25, 2011, the magistrate judge entered the Discovery Order, permitting the government to voluntarily disclose to counsel for the defendant "grand jury, tax return, criminal histories, and other investigative materials." (Discovery Order 1.) The Discovery Order is a standard form proposed by the government and frequently entered by the magistrate judge in criminal cases in this court. It contained the following restriction:

> [C]ounsel for the defense and the individual defendant(s) may use this material solely for the defense of the case, may not photocopy the material except as needed for defense of the case (any photocopy is governed by this order as if it was an original), may not remove this material from the office of defense counsel unless kept in the personal possession of defense counsel at all times . . . .

(*Id.*) The Discovery Order further stated that:

> Unauthorized disclosure of grand jury, tax return, criminal histories, or investigative materials is a violation of federal law and violation of this Order may be deemed a contempt of court pursuant to 18 U.S.C. § 401.

(*Id.* at 2.)

After the Discovery Order was entered, the government provided Mr. Bragg with numerous discovery materials in electronic form. The materials included grand jury transcripts and other investigative documents, such as law enforcement investigative reports and summaries of witness interviews.

On or about January 9, 2012, deputy United States marshals conducted a search of Avery's cell at the Southwest Virginia Regional Jail, where Avery was detained pending trial. They discovered and seized certain documents, copies of which have been filed under seal as an exhibit to the Motion for an Order to Show Cause. The documents include exact copies of parts of the grand jury testimony and other investigative materials disclosed by the government to Mr. Bragg.

Mr. Bragg admits that the documents contained in the exhibit, with the exception of one handwritten page, were provided by him to his client Avery. Mr. Bragg represents that the documents were contained in a written summary of the government's evidence that he prepared for his own use in defending the case. Mr. Bragg represents that, in preparing the summary, he electronically copied portions,

including whole pages, of grand jury transcripts and other investigative materials provided to him by the government pursuant to the Discovery Order, and electronically inserted the copied sections into the summary. Finally, he admits that he provided this summary, including the copied material, to Avery in jail.

Mr. Bragg argues that his conduct did not violate the Discovery Order because he did not literally "photocopy" any of the materials disclosed to him. Instead, he contends that because he electronically copied portions of the investigative materials, which was not strictly forbidden by the Discovery Order by its use of the word "photocopy," he is not guilty of violating the order. In addition, he contends that he provided the material to Avery as part of his obligation to inform his client of the nature of the evidence against him.

The court has the inherent authority to control admission to its bar and sanction lawyers who appear before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). As the Supreme Court noted in *Chambers*, because of the potency of a court's inherent powers, the court must exercise them with restraint and discretion. *Id.* "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45.

The undisputed evidence supports imposition of a sanction in this case. I find that Mr. Bragg's defense that his actions did not violate the Discovery Order, or at least that he reasonably so believed, is unsupportable. First, it is unreasonable

to claim that electronic copying, i.e., "cutting and pasting," did not fall under the Discovery Order's ban on photocopying. The material found in Avery's cell contained pages of exact replicas of grand jury testimony and other investigative materials, copies in every sense of the word. There is no substantive difference between this and a copy made on a photocopy machine.

More importantly, the Discovery Order clearly stated that defense counsel "may not remove this material from the office of defense counsel unless kept in the personal possession of defense counsel at all times." (Discovery Order 1.) The discovery material, however copied, was given to the client outside of Mr. Bragg's personal possession.

That Mr. Bragg's actions in leaving exact copies of the discovery material with his client in jail are obvious violations of the Discovery Order is all the more clear considering the purpose behind its limitations. In this district, the United States Attorney's office has generally adopted an "open file policy." In criminal cases, it is its practice, as sanctioned by the court, to turn over to defendants and their counsel its investigative materials. This benefits the government in that it encourages guilty pleas. It also benefits defendants in that they have access to the government's evidence against them and are better informed as to how to proceed with their case and trial. In order for this system to succeed, however, it is necessary to carefully protect the dissemination of the investigative materials.

Significant harm may come to witnesses and other third parties when materials such as grand jury testimony, law enforcement reports and other such sensitive materials are circulated outside of defense counsel and the defendant.  This risk is particularly pronounced in the context of the jail environment, where it is often the case, as it was here, that government informants are incarcerated along with defendants.  Moreover, unauthorized distribution of grand jury testimony strikes at the core of grand jury secrecy, a fundamental principle of the federal criminal justice system.

It is for these reasons that the standard Discovery Order contains strict restrictions on the dissemination of discovery materials received by the government.  The obvious goal of the restrictions is to keep the discovery materials, or exact copies of them, from being shown or passed around by the defendant.  Of course, the defendant has a right to know the evidence against him and defense counsel has a duty to show him the discovery materials and go over it with him.  But to protect potential witnesses and government informants, those materials are not to leave the possession of defense counsel.  It is one thing for a defendant to learn and repeat to others that someone has testified against him.  It is quite another thing for a defendant to show his jail companions a copy of the witness's actual testimony.  In this setting, the risk posed to such a witness is severe.

Mr. Bragg is an experienced criminal defense lawyer before this court. He was well aware not only of the language of the Discovery Order, but also of the reason for the order and its restrictions. He knew that the Discovery Order sought to protect potential witnesses and government informants from reprisals based on their statements. If Mr. Bragg's client had insisted on lengthy access to the discovery materials himself or if Mr. Bragg had felt that his client needed such access, he could have sought assistance from the court. He could have asked the court for permission to keep the material at the jail for his client to look at under the control of the jail authorities, or he could have asked for some other modification of the Discovery Order. He did not do this. Instead, he disregarded that order.

I decline, however, to hold Mr. Bragg in criminal contempt. I believe that his actions were aberrant behavior. Nevertheless, his conduct, however aberrant, was serious, and deserving of sanctions under the court's inherent authority.

For the foregoing reasons, it is **ORDERED** as follows:

1. Michael A. Bragg is hereby reprimanded for his misconduct in violating the Discovery Order;

2. Mr. Bragg must not seek or accept payment of fee or expenses for his representation of defendant Avery; and

3. Mr. Bragg must pay a monetary sanction in the amount of $350.00 within 30 days to the clerk of this court.

ENTER: February 21, 2012

/s/ James P. Jones
United States District Judge